FILED - GR
December 27, 2018 3:53 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:\_ns\_\_ SCANNED BY: NS 12/28/18

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

David Fraker,

    Plaintiff,

v.

                           Case No.
                           Hon.

City of Grand Rapids,

    Defendant.

1:18-cv-1444
Paul L. Maloney
United States District Judge

David Fraker
3032 Bird Ave NE
Grand Rapids, MI 49525
(616) 644-3038
davidbfraker@gmail.com
Plaintiff, Pro Se

--------------------------------------/

### COMPLAINT AND JURY DEMAND

Plaintiff, David Fraker, pro se, complains against Defendant City of Grand Rapids as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff David Fraker ("Plaintiff") resides in Kent County, Michigan and is a former employee of Defendant City of Grand Rapids.

2. Defendant City of Grand Rapids ("Defendant") is a municipal corporation in Kent County, Michigan.

3. The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq.*

4. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1201, *et seq.* and Michigan's Workers' Disability Compensation Act because they are so related to the federal law claims that they form part of the same case or controversy.

5. Venue is proper in this judicial district, because the events giving rise to this action occurred in this district and division, and all parties reside in or operate within this district.

6. Prior to the filing of this lawsuit, Plaintiff filed a timely written charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and has filed this action within 90 days of his receipt of the right-to-sue letter. Accordingly, Plaintiff has exhausted all administrative remedies prior to the institution of this action.

## GENERAL ALLEGATIONS

7. On or about January 23, 2017, Plaintiff began working for Defendant as a Tree Trimmer I.

8. Job requirements for the Tree Trimmer I position included pruning and removing trees as well as any other tasks needed to assist management.

9. Plaintiff was more than qualified for the Tree Trimmer I position as had prior experience working at a higher level in forestry and possessed a greater skill set than that required in the Trimmer I position.

10. Defendant was aware of Plaintiff's superior qualifications.

11. Plaintiff was an exemplary employee who maintained an excellent performance record.

12. On or about February 23, 2017, Plaintiff was injured on the job when a rope was fed through a wood chipper at the mistake of a crewmember, causing the rope to fly towards Plaintiff with amazing speed and shattering his finger.

13. Following the injury, a crewmember drove Plaintiff to a medical treatment center where he was diagnosed with a shattered left small finger.

14. On or about February 27, 2017, Plaintiff attended the department's morning meeting at his supervisor's, Dan Coy ("Coy"), instruction.

15. After the meeting, Coy informed Plaintiff that he would be paid worker's compensation and off on leave until he was medically released to return to work.

16. On or about March of 2017, Plaintiff provided Coy with an update on the medical state of his finger. Coy, in turn, informed him that Human Resources told Coy that Plaintiff's new-hire probationary period had been put on hold due to his medical leave.

17. Throughout April and May of 2017, Plaintiff continued to provide Coy with updates regarding the medical status of his finger.

18. Sometime in April or May of 2017, Plaintiff informed Coy that he had been medically cleared to return to work with restricted use of his left hand.

19. Coy told Plaintiff that he could not return to work until Plaintiff had been released to work without restriction.

20. Plaintiff informed Coy that he could return to work with restrictions several times in April and May of 2017, but Coy told him that he could not return to work until he was released to work without restrictions.

21. Upon information and belief, Defendant could have accommodated Plaintiff without undue hardship.

22. In May of 2017, Plaintiff applied for a position as an Environmental Resource Technician for Defendant.

23. In late-May of 2017, a medical examination revealed that Plaintiff needed surgery on his left small finger, which he underwent, at which time, Plaintiff was diagnosed with a ruptured flexor tendon in his left small finger.

24. In early-June of 2017, Plaintiff again sought to return to work with restrictions. Coy, again, denied Plaintiff's request.

25. Coy and Human Resources personnel repeatedly denied Plaintiff's request to return to work with restrictions.

26. Upon information and belief, Defendant could have accommodated Plaintiff without undue hardship.

27. On or about June of 2017, Coy suggested that Plaintiff begin looking for new employment.

28. On June 8, 2017, Plaintiff spoke with Human Resources Representative Rowena Patterson ("Patterson") about the next steps for the Environmental Resource Technician position he had applied for May of 2017.

29. When Plaintiff conveyed that there may be lasting affects to his hand as a result of the February 23, 2017 injury, Patterson's demeanor altered and she began attempting to persuade him not to apply for the position.

30. On July 4th and 5th of 2017, Plaintiff attempted to apply for an Arborist position with Defendant, but Patterson rejected his application.

31. On July 6, 2017, Joe Sulak ("Sulak"), Head of the Forestry Department, unexpectedly called Plaintiff and terminated his employment.

32. Sulak first based the termination on the so-called expiration of Plaintiff's probationary period with Defendant.

33. Sulak then told Plaintiff, "Actually we don't have to tell you anything about why we are letting you go. That's just the way it is."

## COUNT I:
## ADA VIOLATION – FAILURE TO ACCOMMODATE

34. Plaintiff incorporates the foregoing allegations by reference as though stated fully herein.

35. At all times relevant to this action, Plaintiff was an employee and Defendant was an employer within the meaning of the Americans with

6

Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq.*

36. At all relevant times, Plaintiff was a qualified individual with a disability as defined in the ADA, in that Plaintiff had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant, and/or Plaintiff had a record of such a disability and/or was regarded by Defendant as having such a disability.

37. Plaintiff's disability was a shattered finger bone and, subsequently, a ruptured flexor tendon.

38. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship on the employer.

39. On more than one occasion, Plaintiff requested accommodation for his disability, namely that he be returned to his position and perform his responsibilities with restricted use of his left hand or that he be placed in a position, for which he was qualified, that would allow him to carry out the responsibilities with restricted use of his left hand. Plaintiff also requested to be made and kept aware of news in the department while he was off the job.

40. At all times relevant hereto, Defendant could have accommodated

Plaintiff's disability without suffering undue hardship.

41. Notwithstanding said duties as set forth above, Defendant refused to accommodate Plaintiff.

42. As a direct and proximate result of Defendant's failure to accommodate Plaintiff, Plaintiff has suffered and will continue to suffer lost wages, lost financial opportunities, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, harm to reputation, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendant.

Accordingly, Plaintiff requests the following relief:

    a.    An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's restrictions;

    b.    An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

    c.    An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

    d.    An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

## COUNT II:
## ADA VIOLATION – DISABILITY DISCRIMINATION

43. Plaintiff incorporates the foregoing allegations by reference as though stated fully herein.

44. The ADA makes it unlawful for an employer to discriminate against a qualified individual, with respect to compensation or terms, conditions, or privileges of employment, because the individual has a disability, a record of a disability, or because the employer regards the individual as disabled.

45. Notwithstanding its obligations under the ADA and in willful violation thereof, Defendant discriminated against Plaintiff because of his disability, record of disability, or because it perceived Plaintiff as disabled when it terminated Plaintiff's employment and refused to consider him for a position he had applied to and was qualified for.

46. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and will continue to suffer lost wages, loss of job opportunity, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, humiliation, physical injury, harm to reputation, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendant.

Accordingly, Plaintiff requests the following relief:

a. An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's restrictions;

b. An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

c. An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

d. An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

## COUNT III:
## ADA VIOLATION – RETALIATION

47. Plaintiff incorporates the foregoing allegations by reference as though stated fully herein.

48. At all relevant times, Plaintiff was a qualified individual with a disability as defined in the ADA, in that Plaintiff had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job and/or jobs to which he applied with Defendant, and/or Plaintiff had a record

10

of such a disability and/or was regarded by Defendant as having such a disability.

49. The Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 and related federal legislation give rise to a duty in the employer not to discharge or in any manner discriminate against an employee because the employee has exercised rights or has been perceived to exercise rights afforded him by the Act and other laws.

50. Defendant likewise had a duty to refrain from terminating Plaintiff's employment or taking any other adverse employment action against Plaintiff for reasons of bad faith or malice or for reasons forbidden by public policy or in retaliation against Plaintiff for invoking his rights under the laws of the United States, including the Americans With Disabilities Act described above.

51. Notwithstanding its duties to Plaintiff and in willful violation thereof, Defendant discriminated against and terminated Plaintiff for invoking his rights under the Act.

52. At various times, including subsequent to Plaintiff's termination, Defendant took unjustified actions to defame him, such as creating a false narrative of his job performance to place in his employment file.

53. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and will continue to suffer loss of earnings and benefits, loss of opportunities for career and personal development, harm to reputation, humiliation, emotional distress, mental anguish, and embarrassment.

54. Accordingly, Plaintiff requests the following relief:

   a. An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's restrictions;

   b. An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

   c. An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

   d. An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

### COUNT IV
### PDCRA VIOLATION – DISABILITY DISCRIMINATION

55. Plaintiff incorporates the foregoing allegations by reference as though stated fully herein.

56. At all times relevant hereto, Plaintiff was an employee and Defendant was an employer within the meaning of the Michigan's Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201, *et seq*.

57. At all times relevant to this action, Plaintiff had a disability within the meaning of the PDCRA, in that he had a history of a disability and/or was regarded by Defendant as having a disability and/or suffered from a disability that substantially limited one or more of his major life activities.

58. At all times relevant hereto, Defendant had a duty under the PDCRA not to discriminate against Plaintiff for purposes of his employment because of his disability.

59. Notwithstanding its obligations under the PDCRA and in willful violation thereof, Defendant discriminated against Plaintiff because of his disability, record of disability, or because it perceived Plaintiff as disabled when it terminated Plaintiff's employment.

60. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and will continue to suffer lost wages, loss of job opportunities, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, harm to reputation, humiliation, physical injury, embarrassment, and emotional distress resulting

from the discriminatory conduct of Defendant.

Accordingly, Plaintiff requests the following relief:

    a.    An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's medical restrictions;

    b.    An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $25,000.00 he is found to be entitled to;

    c.    An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

    d.    An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

## COUNT V
## PDCRA VIOLATION – FAILURE TO ACCOMMODATE

61. Plaintiff incorporates by reference all of the allegations contained above as thought stated in full herein.

62. Plaintiff was an employee and Defendant was an employer within the meaning of the Michigan Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201.

63. At all times relevant to this action, Plaintiff was a qualified

individual with a disability, in that Plaintiff is an individual with a disability, who, with or without accommodation, could perform the essential functions of his employment.

64. Plaintiff had a disability within the meaning of the PDCRA, in that he had a physical impairment that substantially limits one or more of his major life activities, or a record of such impairment, or is regarded as having such impairment.

65. Plaintiff's disability was a shattered finger bone and, subsequently, a ruptured flexor tendon.

66. At all times relevant hereto, Defendant had a duty under the PDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship.

67. On more than one occasion, Plaintiff requested accommodation for his disability, such as that he be returned to his position and perform his responsibilities with restricted use of his left hand or that he be placed in a position, for which he was qualified, that would allow him to carry out the responsibilities with restricted use of his left hand.

68. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering undue hardship.

69.     Notwithstanding said duties as set forth above, Defendant refused to accommodate Plaintiff.

70.     As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered and will continue to suffer lost wages, loss of job opportunities, opportunities for career and personal development, benefits, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, harm to reputation, humiliation, embarrassment, physical injury, and emotional distress resulting from the discriminatory conduct of the Defendant.

Accordingly, Plaintiff requests the following relief:

a.    An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's medical restrictions;

b.    An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $25,000.00 he is found to be entitled to;

c.    An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

d.    An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

## COUNT VI
## WORKERS' COMPENSATION ACT – RETALIATION

71. Plaintiff incorporates by reference all of the allegations contained above as though stated in full herein.

72. At all times relevant hereto, Plaintiff was an employee and Defendant an employer within the meaning of the Michigan Workers' Disability Compensation Act, MSA § 7237(101), *et seq.*; MCLA § 418.301(11), *et seq.*

73. The laws of the State of Michigan, *to-wit:* the Workers' Compensation Act described above, provides that a worker who becomes disabled during the course of employment is entitled to claim for and receive workers' compensation benefits.

74. The Workers' Disability Compensation Act described above gives rise to a duty in the employer not to discharge or in any manner discriminate against an employee because the employee has exercised rights afforded him by the Act.

75. Defendant likewise had a duty to refrain from terminating Plaintiff's employment or taking any other adverse employment action against Plaintiff for reasons of bad faith or malice or for reasons forbidden by public

17

policy or in retaliation against Plaintiff for invoking his rights under the laws of the State of Michigan, including the Workers' Disability Compensation Act described above.

76. Notwithstanding its duties to Plaintiff and in willful violation thereof, Defendant discriminated against and terminated Plaintiff in retaliation for invoking his rights under the Act.

77. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and will continue to suffer loss of earnings and benefits, emotional distress, mental anguish, and embarrassment.

78. Accordingly, Plaintiff requests the following relief:

a. An Order of this Court allowing Plaintiff reinstatement to a position with Defendant within Plaintiff's medical restrictions;

b. An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $25,000.00 he is found to be entitled to;

c. An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

d. An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendants, and award him economic and non-economic damages sustained as a direct and proximate result of Defendants' conduct, punitive damages, all other equitable and injunctive relief deemed appropriate at the time of final judgment, together with costs and interests, attorney fees, and all such other legal and equitable relief as this Court deems just and proper.

_____
David Fraker, Pro Se

Date: 12/27/2018

## NOTICE OF LIMITED SCOPE ASSISTANCE

"This document was drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to Michigan Rule of Professional Conduct 1.2(b)."