UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID FRAKER,                  )

            Plaintiff,      )

                        )     No. 1:18-cv-1444

-v-                        )

                        )     Honorable Paul L. Maloney

CITY OF GRAND RAPIDS,   )

            Defendant.   )

                        )

## OPINION

This matter is before the Court on Defendant City of Grand Rapids' motion for summary judgment (ECF No. 52). The Court finds that oral argument is unnecessary, so the City of Grand Rapids' motion to preserve oral argument (ECF No. 56) will be dismissed as moot. For the reasons to be explained, the motion for summary judgment will be granted.

## I.

In January 2017, Plaintiff David Fraker began working for the City of Grand Rapids ("Grand Rapids" or "the City") as a Tree Trimmer I (Complaint, ECF No. 1, at ¶ 7). Grand Rapids enforces a standard probation period for new employees of six months (*see* ECF No. 53-8 at ¶ 406.1). The Tree Trimmer I job requires an employee be able to prune, trim, and remove trees using hand saws, power saws, and other specialized equipment; remove split and damaged limbs and limbs that are resting on overhead power lines; plant trees; remove stumps and roots; operate equipment in a safe manner; and perform manual labor up to and including lifting heavy objects (*see* ECF No. 53-2).

Fraker was qualified for the Tree Trimmer I position, but he had performance problems in his first few weeks on the job. Floyd Callender, Fraker's "lead worker", testified that at times, Fraker failed to follow Callender's instructions, endangered coworkers by throwing brush from the aerial bucket, and performed a technique known as bore-cutting that the City does not use (*see generally* Affidavit of Floyd Callender, ECF No. 53-3). Dan Coy, Fraker's supervisor and the City Forester, advised Fraker to follow Callender's instructions, but did not issue a written warning or reprimand to Fraker because he believed Fraker was still adapting to being part of a new team (*see* Affidavit of Dan Coy, ECF No. 53-4 at ¶ 3).

On February 23, 2017, Fraker was injured on the job: a rope was mistakenly fed through a woodchipper, flew out, and shattered his left pinky finger (Complaint at ¶ 12). On February 24, 2017, Fraker's doctors restricted him from "work requiring grasping, gripping, squeezing of the left hand" (ECF No. 50 at PageID.146). Shortly thereafter, Fraker underwent a bone-pinning surgery, and his recovery from that surgery was expected to take six weeks (*see* Fraker deposition, ECF No. 53-18 at PageID.290).

On February 27, 2017, Fraker attended a department meeting at Coy's request (Complaint at ¶ 14). Coy advised Fraker that he would be placed on medical leave and paid worker's compensation until he was medically released to return to work (*see* Coy affidavit, ECF No. 53-4 at ¶¶ 5-6). While he was on leave, Fraker received worker's compensation and a wage supplement resulting in virtually full pay (*see* Human Resources records at ECF No. 53-6).

2

Sometime in March 2017, Fraker informed Coy that he was still injured (Complaint at ¶ 16). In response, Coy informed Fraker that his new-hire probationary period had been effectively paused due to his medical leave, because Fraker had been on the job less than a month and his recovery was expected to be short (*see* Coy affidavit, ECF No. 53-4 at ¶ 5). Coy made a request to Human Resources to pause the probation, but Human Resources never acted on the request (*id.*).

On April 24, Fraker's doctor, Dr. Julienne Little, ordered that he could not work in the bucket or feed the chipper, but he could do ground level clean up (ECF No. 50 at PageID.151). However, Dr. Little advised that Fraker was still at risk for snagging his injured finger because it did not bend yet (*Id.*).

Fraker continued to update Coy throughout April and May of 2017 (Complaint at ¶ 17). At some point, Fraker allegedly told Coy he had been cleared to return to work with restricted use of his left hand (*Id.* at ¶ 18). In response, Coy told Fraker that because of the nature of the Tree Trimmer I position, Fraker could not return to work until he had no work restrictions (*Id.* at ¶ 19; *see also* Coy affidavit, ECF No. 53-4 at ¶ 6). Fraker maintains that he pushed on the issue, telling Coy multiple times that he could return to work if accommodated to his restrictions (Complaint at ¶ 20).

Coy, together with Parks Superintendent of the Department of Parks and Recreation Joe Sulak, considered whether Fraker could do ground level clean up, but given the risk of reinjuring the finger by snagging it, they decided that Fraker should not perform those tasks (*see* Coy affidavit, ECF No. 53-4 at ¶ 6; Joe Sulak affidavit, ECF No. 53-11 at ¶ 4).

While still on leave in May 2017, Fraker applied for a position as an Environmental Resource Technician ("ERT") with the City (Complaint at ¶ 28).

On May 8, 2017, one of Fraker's doctors recommended a second surgery (*see* Fraker deposition, ECF No. 53-18 at PageID.291). During that surgery, Fraker was diagnosed with a ruptured flexor tendon which required his left hand to be completely immobilized for five weeks (ECF No. 50 at PageID.156). Fraker was excused from work until June 5, 2017, and on June 5, Fraker's doctor restricted him to "no use of left hand" (*Id.* at PageID.156-7).

Through Sulak, Fraker informed the City that his injury had been worse than originally anticipated, and that in the short term, he could not do anything with his left hand (Fraker deposition, ECF No. 53-18 at PageID.295). But, Fraker reported, his hand was expected to eventually recover fully (*Id.*). At this time, the expected recovery period was two to three months, which placed his return to work beyond the expected end of his probation period in July (*Id.* at PageID.296).

Fraker continued to ask Coy if he could return to work with restrictions. As before, Coy denied the requests. Fraker claims that he proposed various tasks, like spraying or injecting trees, serving as a traffic flagman, or training volunteers (*see* Fraker deposition, ECF No. 53-18 at PageID.332-4). However, Fraker did not request a transfer to any specific position outside of Tree Trimmer I.

On June 8, 2017, Fraker spoke with Grand Rapids Human Resources Representative Rowena Patterson about the next steps for the ERT position that he had applied for in May (Fraker deposition, ECF No. 53-18 at PageID.361). Fraker was interviewed for the position but did not receive it (*Id.* at PageID.361-2). When Fraker conveyed that his hand may have

4

lasting injuries because of the February accident, Patterson made some "disparaging remarks" about the injury (*Id.* at PageID.370).

On June 26, 2017, unbeknownst to Fraker, Sulak met with Human Resources personnel (not including Patterson) and decided that Fraker's employment should be terminated (Sulak affidavit, ECF No. 53-11 at ¶ 6).

On July 4 and 5, 2017, Fraker attempted to apply for an Arborist position with the City but encountered technical difficulties and was unable to submit a completed application (Fraker deposition, ECF No. 53-18 at PageID.366-370). Patterson advised Fraker that his application was not in the system, and he would have to provide proof that he timely applied but encountered technical difficulties to be considered (*Id.* at PageID.372). It does not appear that he did so. On July 6, Patterson informed Fraker that no other applicants reported trouble with the website, and the deadline would not be extended for Fraker (*see* email thread, ECF No. 53-13).

On July 5, 2017, Fraker's work restriction was eased slightly, to "light use of the left hand and no lifting over 5 pounds" (ECF No. 50 at PageID.158). But on July 6, 2017, Sulak called Fraker and terminated his employment, effective July 17, 2017 (Sulak affidavit, ECF No. 53-11 at ¶ 7).

On July 18, 2017, Fraker's union representative, Ken Deering, requested a step one grievance hearing (Ken Deering affidavit, ECF No. 53-9 at ¶ 2). However, Fraker was a probationary employee, so he was not entitled to file a grievance under the applicable collective bargaining agreement (*Id.* at ¶ 2; *see also* CBA, ECF No. 53-7 at PageID.241). The union took no further steps on Fraker's behalf (*Id.* at ¶ 3).

5

In September 2017, Fraker had to have two more surgeries (ECF No. 50 at PageID.167). He continued to have medical restrictions on his left hand well into 2018 (*Id.* at PageID.168).

Grand Rapids continued to pay Franker's worker's compensation benefits through February 23, 2019 (*see* Mary Karcis affidavit, ECF No. 53-6). All told, the City has paid Fraker over $50,000 (*Id.*).

In February 10, 2018, Fraker filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), charging the City with disability discrimination (*see* ECF No. 53-10). The EEOC dismissed the claim and issued a right to sue letter.

On December 27, 2018, Fraker filed this complaint. He brings six claims: I) failure to accommodate in violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12131, *et seq.*; II) disability discrimination in violation of the ADA; III) retaliation in violation of the ADA; IV) disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101, *et seq.*; V) failure to accommodate in violation of the PWDCRA; and VI) retaliation in violation of the Michigan Workers' Disability Compensation Act ("WDCA"), MCL 418.101, *et seq.*

Grand Rapids now moves for summary judgment, arguing that Fraker was not a qualified person within the meaning of the law, that he has not shown that the City failed to reasonably accommodate him, and that he has failed to show that the City retaliated against him based on his disability (ECF No. 52). Fraker has not responded to the City's motion.

## II.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin*

*College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks removed). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.

The Court first considers Fraker's discrimination and failure to accommodate claims under the ADA (Counts I and II).

The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). There is no dispute that the City of Grand Rapids is a covered entity.

A *prima facie* case of disability discrimination requires Fraker to show that 1) he was disabled within the meaning of the ADA; 2) he was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation; 3) he suffered an adverse employment action; 4) the City of Grand Rapids knew or had reason to know of

his disability; and 5) the position remained open or a nondisabled person replaced him. *Green v. BakeMark USA, LLC*, 683 F. App'x 486, 491 (6th Cir. 2017).

Similarly, a *prima facie* failure to accommodate case require Fraker to show that 1) he was disabled within the meaning of the ADA; 2) he was otherwise qualified for the position, with or without a reasonable accommodations; 3) the City of Grand Rapids knew or had reason to know of his disability; 4) he requested a reasonable accommodation; and 5) the City of Grand Rapids failed to provide the reasonable accommodation. *Aldini v. Kroger Co. of Michigan*, 628 F. App'x 347, 350 (6th Cir. 2015).

The City of Grand Rapids does not dispute that Fraker is disabled, so the first question for the Court is whether Fraker was a "qualified individual" under the ADA. 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires . . . ." 42 U.S.C. § 12111(8); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc). Thus, to be a qualified individual under the ADA, Fraker must prove that he was able to perform the essential functions or duties of the Tree Trimmer I with or without reasonable accommodations. 42 U.S.C. § 12111(8); *Ford*, 782 F.3d at 761.

To determine the "essential functions" of an employment position, the ADA provides that "consideration shall be given to the employer's judgments to what functions of a job are essential, and if an employer had prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Similarly, the EEOC regulations

applicable to the ADA provide that the term "essential functions" means "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1360.2(n)(1). "The term 'essential functions' does not include the marginal functions of the positions." *Id.* The EEOC regulations further provide that evidence of whether a particular function is essential includes, but is not limited to:

(i)      The employer's judgment as to which functions are essential;

(ii)     Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)    The amount of time spent on the job performing the function;

(iv)     The consequences of not requiring the incumbent to perform the function;

(v)      The terms of a collective bargaining agreement;

(vi)     The work experience of past incumbents in the job; and/or

(vii)    The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

The City of Grand Rapids posted a job description for the Tree Trimmer I position before Fraker applied for the job (ECF No. 54-1). The job description listed examples of the position's duties, including:

- removing, trimming, pruning, and topping trees, using specialized equipment and hand and power saws;

- trimming trees to assure adequate clearance for overhead utilities;

- removing split and damaged limbs from storm damages trees; removing limbs from power lines; removing trees and limbs fallen into streets and onto cars and buildings;

- planting trees, removing stumps and roots; and

- operating a variety of standard power and hand tools and specialized equipment, such as chain saws, chippers, stump cutters, mobile aerial tower, hoppers, and the like.

(*Id.*). The job description also specifies "requirements of work," which included specialized knowledge of tree trimming practices, equipment, and safety standards; possession of a commercial driver's license; and the ability to

- operate equipment (e.g., hand and power saws, tree trimming and removal equipment and trucks) in a safe manner;

- Perform heavy manual labor (including "lifting heavy objects"); and

- Work cooperatively with other employees and the public.

(*Id.*). To distill this down even further, Sulak and Coy both provided affidavits that make clear that pruning, trimming, and removing trees and limbs are, at minimum, the essential functions of the Tree Trimmer I position. (Coy affidavit, ECF No. 53-4 at ¶ 8; Sulak affidavit, ECF No. 53-11 at § 3). These are the functions performed by all City employees that hold the Tree Trimmer I position (Sulak affidavit, ECF No. 53-11 at ¶ 3).

The Court finds that these are the essential functions of the Tree Trimmer I position. Notably, Fraker agrees: his complaint lists the job requirements for the Tree Trimmer I position as including pruning and removing trees (ECF No. 1 at ¶ 8). And at his deposition, Fraker agreed that the posted Tree Trimmer I job description included the essential functions of the job (Fraker deposition, ECF No. 53-18 at PageID.316-18). Accordingly, the burden falls on Fraker to demonstrate that he could perform the essential functions of the Tree Trimmer I position with or without a reasonable accommodations.

The relevant time in determining whether a plaintiff is a qualified individual covered by the ADA is at the time of discharge. *Aston v. Tapco Intern. Corp.*, 631 F. App'x 292, 297. Fraker was notified of his termination on July 6, 2017. He admitted that as of that date, he could not use power saws, go up in the bucket, use the chipper, remove damaged tree limbs, or operate standard power tools (Fraker deposition, ECF No. 53-18 at PageID.335-6). Therefore, Fraker admitted that at the relevant time, he could not perform the essential functions of the Tree Trimmer I position.

Further, there was no reasonable accommodation that the City could provide that would allow Fraker to safely perform these essential functions, because all of the essential functions required the use of two hands (*see* Coy Affidavit, ECF No. 53-4 at ¶¶ 12-14). It would not be reasonable or safe to have a second person assist Fraker with operating power tools. Fraker could not go up in the bucket at all, so someone else would have to perform any tasks in the bucket for him. In other words, for the City to accommodate Fraker's ability to perform the Tree Trimmer I position, some of the essential functions of the job would have to be eliminated. That would be an unreasonable accommodation. *Ford*, 782 F.3d at 761.

The Court recognizes that Fraker must be permitted to propose an accommodation that would allow him to effectively perform the essential functions of the Tree Trimmer I position. *Id.* at 763. However, he did not do so. Fraker did attempt to take on some of the smaller tasks of the job, like serving as a spotter, or doing work of other positions, like spraying and injecting trees; but he never suggested accommodations that would allow him to perform the functions of the Tree Trimmer I position. Fraker's other suggestions, like

allowing him to answer phones or train volunteers, are outside the scope of the Tree Trimmer I's essential functions. The City was not required to effectively allow Fraker to create his own job with the accommodations of his choosing. *Id.* at 764; *see also Trout v. Electronic Data Systems Corp.*, 151 F. App'x 390, 399 (6th Cir. 2005). Thus, these suggested accommodations are irrelevant.

The Court finds that Fraker was not a "qualified individual" within the meaning of the ADA. Thus, he has not proven a *prima facie* case on Count I or Count II, and these claims must be dismissed. The PWDCRA is evaluated under substantially the same standard as the ADA. *Peden v. City of Detroit*, 680 N.W.2d 857, 864 (Mich. 2004). Therefore, Counts IV and V must also be dismissed.

That leaves Fraker's ADA retaliation claim. To successfully bring a retaliation claim under the ADA, Fraker must show 1) that he engaged in an activity protected by the ADA; 2) that the City knew he exercised his protected right; 3) that the City took an adverse employment action against him or subjected him to severe or pervasive retaliatory harassment, and 4) that there was a causal connection between his protected activity and the City's Action. *Aldini*, 628 F. App'x at 352.

For the purposes of this motion, the City does not dispute the first three elements. Instead, the City argues that Fraker has not shown that there was a causal connection between his protected activity and the city's actions. "Discrimination here means retaliation – that 'but for' an employee's statutorily protected activity, the employer would not have taken the adverse employment action.' " *Ford*, 782 F.3d at 767 (quoting *Univ. of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338, 360 (2013)). In other words, to establish a *prima*

*facie* retaliation case, Fraker must establish that his protected activity was a but-for cause of the alleged action by the City. *Id.* at 770. A retaliation claim under the WDCA (Count VI) requires the same showing: that the employer took an adverse employment action and that action was casually connected to the employee's assertion of a protected right. *Cuddington v. United Health Services*, 826 N.W.2d 519, 523 (Mich. Ct. App. 2012).

Fraker alleges that three of the City's actions were adverse to him: 1) Patterson's refusal to allow him to apply for the Arborist position after the deadline closed and her treatment of him during their interactions, 2) Sulak's call terminating his employment, which Fraker alleges came 14 minutes after Patterson denied him the ability to be considered for the Arborist position; and 3) the placement of a "bogus" performance evaluation in his employment file. The Court will consider each in turn.

First, Patterson's refusal to consider Fraker's late-submitted Arborist position. There is no evidence in the record that shows that this had any connection at all to Fraker's disability, nor to the exercise of his civil rights. It appears to be a technological glitch that caused Fraker's inability to apply, but the application and the technology involved had nothing to do with his left pinky finger injury. As such, there is no way that a reasonable jury would conclude that but-for Fraker's disability, he would have been considered for the Arborist position. Further, to the extent that Fraker found Patterson's comments rude or inappropriate, such comments do not give rise to a claim simply because "they cause the employee distress." *Ford*, 782 F.3d at 768. Therefore, this claim is meritless.

Second, the temporal proximity between Patterson's refusal to allow Fraker's late application and Sulak's call terminating his employment. Temporal proximity can establish

a causal connection where an adverse employment action occurs very close in time after the employer learns *of the protected activity. Lindsay v. Yates*, 578 F.3d 407, 418-19 (6th Cir. 2009). Even assuming that the protected activity was Fraker's arborist application, there is no evidence in the record that suggests that Sulak knew about the application, nor did he know that Patterson was enforcing the deadline against Fraker. Finally, the decision to terminate Fraker was made on June 26, and Fraker attempted to apply for the Arborist position on July 4. Therefore, there is simply no temporal proximity between the two events, and there is no way a reasonable jury could find that but-for Fraker's protected activity, his termination would not have occurred.

Finally, Fraker objects to the performance evaluation placed in his file after he was fired. It is not clear that this is an adverse employment action because it had no impact on Fraker. But even assuming that it was an adverse employment action, it is not related to his disability. It is a City of Grand Rapids policy to evaluate an employee when their probation period ends, even if the probation period ends unsuccessfully (*see* ECF No. 53-7). There is no record evidence that supports any relation between Fraker's injury and the performance evaluation. Therefore, there is no way a reasonable jury could find that but-for Fraker's disability, he would not have received this performance evaluation.

In sum: none of the allegations Fraker makes are legally sufficient retaliation claims under the ADA or under the WDCA. Therefore, Counts III and IV must also be dismissed.

## IV.

Having found that none of Plaintiff's claims are supported by record evidence, the Court finds that no genuine questions of material fact remain and Defendant is entitled to summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (ECF No. 52) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to preserve oral argument (ECF No. 56) is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that Defendant's objection to Plaintiff's demand for a jury trial (ECF No. 25) is **DISMISSED** as moot.

Judgment to follow.

**IT IS SO ORDERED.**

Date:  September 4, 2020                                           /s/ Paul L. Maloney
                                                                Paul L. Maloney
                                                                United States District Judge